PEOPLE v FIELDS

OPINION OF THE COURT

1. INFANTS—STATUTES—PROBATE CODE—STANDARDS.

The child's welfare and the best interest of the state standard in the section of the chapter of the Probate Code dealing with juveniles and the juvenile division which states in part that the chapter shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control as will be conducive to "the child's welfare and the best interest of the state" is so vague and subject to so many possible interpretations as to be no standard at all.

2. STATUTES—INVALID STATUTE—STANDARDS—CONSTITUTIONAL LAW— COURTS—COURT RULES.

A statute, invalid for want of standards according to the constitutional rule cannot be validated by any rule of Court which, although in itself well within the constitutional powers of the Court, undertakes to supply what the statute does not.

3. STATUTES—STATUTORY DEFECTS—COURTS.

Statutory defects cannot depend upon the grace or favor of the court.

4. INFANTS—STATUTES—PROBATE COURT—JURISDICTION—WAIVER— CRIMINAL LAW—STANDARDS—CONSTITUTIONAL LAW.

Statute, providing for waiver by the probate court of jurisdiction of a child over the age of 15 years accused of any act the nature of which constitutes a felony, is unconstitutional because it lacks standards; if the Legislature is to treat some persons under the age of 17 differently from the entire class of such persons, excluding them from the beneficient processes and purposes of our juvenile courts, the Legislature must establish suitable and ascertainable standards whereby such

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 16 Am Jur 2d, Constitutional Law § 3 et seq.

Liability of parent for injury to unemancipated child caused by parent's negligence, 41 ALR3d 904.

persons are to be deemed adults and treated as such subject to the processes and penalties of Michigan's criminal law (MCLA 712A.4).

OPINION FOR AFFIRMANCE

BLACK, J.

5. INFANTS—PROBATE COURT—JURISDICTION—CRIMINAL LAW—WAIVER —DISCRETION— STATUTES—DELEGATION OF LEGISLATIVE POWERS— CONSTITUTIONAL LAW.

> *Statute, providing for waiver of probate court jurisdiction of a child over the age of 15 years accused of any act the nature of which constitutes a felony to a court having general jurisdiction of such offense, comes within and is authorized by a well recognized exception to the rule prohibiting delegation of legislative powers; here that exception is made by an express mandate of the Michigan Constitution declaring that the probate court and the judges thereof "shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law" in pursuance of which the Legislature by that statute has not attempted to delegate to the probate court the power to make a law or laws but, rather, has conferred upon that court "a mere legal discretion which is exercised in discerning the course prescribed by law and which, when discerned, it is the duty of the court to follow" (Const 1963, art 6, § 15; 1948 CL 712A.4).*

6. INFANTS—PROBATE COURT—JURISDICTION—CRIMINAL LAW—WAIVER —STATUTES— CONSTITUTIONAL LAW.

> *Statute, providing for waiver by the probate court of jurisdiction of a child over the age of 15 years accused of any act the nature of which constitutes a felony, is valid as against the attack made thereon that it is unconstitutional for want of standards governing probate determination of how such a juvenile may be waived to circuit court for trial (1948 CL 712A.4).*

Appeal from Court of Appeals, Division 2, Bronson, P. J., and Fitzgerald and Churchill, JJ., affirming Washtenaw, John W. Conlin, J. Submitted April 4, 1972. (No. 6 April Term 1972, Docket No. 53,287.) Decided July 26, 1972. Rehearing granted September 1, 1972.

30 Mich App 390 reversed.

Andrew B. Fields, 16 years old, was accused in probate court of acts the nature of which constitute felonies. Order entered waiving jurisdiction to circuit court. Defendant appealed to circuit court. Affirmed. Defendant's application for leave to appeal to the Court of Appeals denied. Defendant's application for leave to appeal to the Supreme Court granted and case remanded to Court of Appeals. 383 Mich 761. Affirmed. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Karl V. Fink,* Assistant Prosecuting Attorney, for the people.

*Clan Crawford, Jr.,* for defendant.

*Amicus Curiae:* Michigan Probate and Juvenile Court Judges Association (by *Mary Coleman).*

ADAMS, J. On August 16, 1968, upon a motion by the prosecuting attorney for waiver of jurisdiction of Andrew Fields on petitions for uttering and publishing of checks and breaking and entering, the Probate Judge for Washtenaw County ruled as follows:

"*The Court:* I rule that, on the testimony that has been presented, that a prima facie case has been made out on both petitions. The question of fact in the situation is something that, of course, has to be proven before a jury or a judge. But the record, as presented by the prosecuting attorney, would, if there were a magistrate, if there were a preliminary examination, would, I am certain, warrant the binding of someone to Circuit Court; if this was presented, that certainly it would be submitted to the jury.

"So I do rule at this time that the matter has been made out.

"The next question is whether or not the Court should retain jurisdiction or whether or not it should waive the jurisdiction to a higher court.

"The basis upon which this is done is contained in Downs, Michigan Juvenile Court: Law and Practice.

"The ultimate question is not solely whether the juvenile may be rehabilitated through the facilities of the Juvenile Court. And the Court, of course, does have the responsibility to determine whether everything that could be done for the individual in the Juvenile Court has been done. Also, whether or not the particular individual is so mature that the facilities of the Juvenile Court cannot aid, and their cases must be referred to criminal courts.

"There are three tests that apply there:

"(1) 'Where the nature of the offense which in itself was of such an obviously adult character as to make the juvenile court inappropriate.'

"(b) 'Where the court has made use of every available disposition and the minor has been unamenable to treatment.'

"And (c) 'Where the minor whose physical and mental development showed a maturation beyond the calendar age and which made the minor unwilling to accept treatment as a minor.'

"Now, my ruling is that these tests have been met, and I am ordering that the matter be referred to the Circuit Court.

"In support of that ruling, I will give you the reason for it.

" 'Where the nature of the offense was in itself of such an obviously adult character as to make the juvenile court inappropriate.' I think it has been shown, after all, that this was not just a case of sudden impulse. This was a rather planned breaking and entering; that the theft was not of money but of a check protector; the developing of the checks; the writing of them, all of this is, in my judgment, of a mature character, to make the Juvenile Court inappropriate.

"It is mature.

" 'Where the court has made use of every available disposition and the minor has been unamenable to

treatment.' We have had Andy on probation for years. He has not responded to it. It is true there is one facility which the Court would not use, that is the training school. I will go into that in a moment. That would be the only thing that is left, if there were a conviction in this case.

"Second, 'A minor whose physical and mental development showed a maturation beyond calendar age and which made the minor unwilling to accept treatment as a minor.' After all, the record has shown he is over 15 years old, very close to 17 years old; he is married; and his response, actually, to the efforts that the Court has made, the social worker has made, has not been effective.

"But I think beyond that, the defendant did, it was indicated in the previous hearings, feel that a trial was necessary. I think we should recognize there is a denial and a demand for trial. I think the question whether this Court can give him the type of trial that this particular serious matter deserves. And I cannot, under the law, provide for a jury trial, other than by a six-juror panel. Six people determined by the sheriff's department. On the other hand, the Circuit Court does have the authority to offer him a trial by a jury of 12 people, under the provisions of the Circuit Court.

"In the previous hearing, it was stated here that the desire was for an open court, a 12-man jury, and for one open to the news media. Of course, this is inconsistent with the philosophy, and for the ability, actually, of the Juvenile Court to provide. If the ultimate decision in this case, trial in this case, results in an acquittal, certainly the court that is best equipped to provide the fairest trial, that of a 12-man jury, should be afforded.

"Now, on the other hand, if it should result in a conviction, the only this [sic] this Court could do, if it should remain in Juvenile Court, the only disposition left would be commitment to the training school. And this would mean that I would have to commit a person close to 17, who is married, whom, I understand, his wife is expecting a baby, to the training school. I would have no other alternative because the probationary order has not proven effective. Secondly, the other

possibility, of course, would be a school like Boy's Republic. This, I think, would be rejected, at least.

"On the other hand, if the allegations were sustained in the Circuit Court, then they do have the facilities of adult probation, also the provisions relative to adult young offenders, which would, of course, be a responsibility of the judge in the Circuit Court to make whatever disposition he felt appropriate, but he does have these facilities that this Court does not have.

"I regret it when I say that there has not been more response to the efforts that have been made, and the efforts of Mr. Newhouse, but since there were not, since we have a serious matter before us, since there is a denial and since there are limitations upon which this Court could do as far as Andrew Fields is concerned, the order is that the matter be waived to Circuit Court in both cases."

The issue as to whether the probate judge had authority to waive Andrew B. Fields to circuit court for trial as an adult was considered by the circuit court. On December 27, 1968, that court held:

" * * * There is a question in the Court's mind whether or not the fact that the statute does not set forth any guide-lines for the juvenile judge to follow in making a decision as to whether or not to waive the minor to circuit court for trial to some extent bothers the Court as to whether or not it is a constitutional statute * * * . * * * I think in view of the fact that Judge O'Brien did make his findings and that the findings comply with the reasons given in the Kent case, that, therefore, the Court will have to find that the statute under which Mr. Fields was bound over in this case does comply with the necessary constitutional requirements * * * ."

On April 24, 1969, the Court of Appeals denied leave to appeal. On January 26, 1970, this Court granted leave and remanded the matter to the Court of Appeals for a determination as on grant

by that Court of defendant's application for leave to appeal. The Court of Appeals (30 Mich App 390 [1971]) held that (p 392):

"Although the *Kent* decision enunciated certain standards which must be met in order to satisfy the requirements of due process and fairness, the Court did not hold that a statute which failed to enumerate the standards is constitutionally defective."

The Court concluded (p 393):

"After a careful review of the record, we are of the opinion that the waiver proceedings in the instant case were in accord with the basic requirements of due process and fairness, as well as our juvenile court act."

Application for leave to appeal to this Court, filed March 4, 1971, stated:

"The sole issue involved in this litigation is whether or not the statute allowing probate courts to waive jurisdiction over certain juveniles is void on its face, and the attack is based solely on the theory that the statute is void because it lacks standards for determining whether or not the probate court should waive jurisdiction. * * *

"The legislature, by Act 288, P. A. 1939 (Sec. 27.3178 (598.1) et seq. Mich Stats Anno) sought to protect juveniles from the consequences of prosecution in our criminal courts by setting up the juvenile court system. Whether or not a probate judge has power to deny a particular juvenile the advantages of the protection of the statute is certainly a matter of major significance to the jurisprudence of Michigan."

In an *Amicus Curiae* Brief of Michigan Probate and Juvenile Court Judges Association filed by Mary Coleman, Judge of Probate of Calhoun County and President of said Association, the issue in this case is succinctly stated as follows:

"The principal issue being argued in this case is the extent to which the legislature may delegate power to another body or agency. *Such delegation must include sufficient standards so as to obviate any delegation of legislative power.* The legislature may not delegate the power to make laws." (Emphasis added.)

The statute with which we are concerned (MCLA 712A.4; MSA 27.3178 [598.4]) states:

"In any case where a child over the age of 15 years is accused of any act the nature of which constitutes a felony, the judge of probate of the county wherein the offense is alleged to have been committed may, after investigation and examination, including notice to parents if address is known, and upon motion of the prosecuting attorney, waive jurisdiction; whereupon it shall be lawful to try such child in the court having general criminal jurisdiction of such offense."

The Washtenaw County prosecutor has also cited section 1 of the chapter of the Probate Code dealing with juveniles and the juvenile division (MCLA 712A.1; MSA 27.3178 [598.1]), which states in part as follows:

"Sec. 1. * * *
"This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control, preferably in his own home, as will be conducive to the child's welfare and the best interest of the state and that when such child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to the care which should have been given to him by them."

The *amicus* brief, also citing the above chapter, argues that the juvenile code must be considered as a whole, and states:

"In addition to those set forth above, the statutory standards include the following:

"(a) The subject must be a child over the age of 15. Further, a person is charged as an adult in the event he is charged with a criminal offense and has reached his 17th birthday.

"(b) The subject must be accused of an act the nature of which constitutes a felony. (A petition is described in 712A.11).

"(1) The definition of a felony is provided in the criminal law statutes and cases.

"(2) The definition of the alleged felony in question is contained in the criminal law statutes and cases.

"(c) The officer to hear the matter must be the judge of probate of the county wherein the act is alleged to have taken place.

"(d) An investigation must be made.

"(e) A motion must have been made by the prosecuting attorney.

"(f) Notice must be given.

"(1) The manner of giving notice is set forth more fully in 712A.12 and 712A.13.

"(g) An examination (hearing) must be held.

"(h) The child's right to have an attorney present is described in 712A.17."

While all of the above are in accord with general concepts of due process, none of the enumerations go to the issue of standards except the age of the child and the nature of the offense.

The probate judge, as appears from his quoted opinion, carefully, thoroughly and conscientiously set forth well-considered reasons for taking the action he did. However, the circuit judge was unable to find in the statute any guidelines for the juvenile judge to follow. As for the guidelines, the prosecutor tells us:

"In Michigan, once the facts of the situation are shown to come within the provisions of MSA 27.3178

(598.4) it is assumed that the standard which will guide the Court in determining whether or not to waive jurisdiction will be that portion of MSA 27.3178 (598.1) quoted above, with the primary emphasis on 'the child's welfare and the best interest of the state.' "

The attorney for defendant, in the conclusion of his brief, states:

"An appellate court cannot meaningfully review the action of another body or person unless it has something to measure that action against. The courts are charged with seeing to it that each litigant enjoys the equal protection of the laws, and without standards of conduct for the Judge of Probate, an appellate court cannot tell whether equality of treatment is being afforded and counsel cannot sensibly present either side of such a case."

It is important to understand the precise issue in this case. It is not whether the constitutional requirements of due process stated in *Kent v United States,* 383 US 541; 86 S Ct 1045; 16 L Ed 2d 84 (1966), were met. Rather, it is whether the lack of standards in the statute preclude a waiver proceeding.

We begin with a basic classification by the Legislature of all persons under 17 years of age as juveniles. Under this classification, Andrew Fields could have been subjected to confinement at the Boys' Vocational School for less than four years. Standing trial as an adult, he would be subject to punishment by imprisonment in a penitentiary for up to 14 years. (1948 CL 750.249; MSA 28.446). Absent carefully defined standards in the statute itself which would justify such disparity of treatment, there is no way by which it can be determined what standard a probate judge should apply in a waiver proceeding. He might use the standards used by Judge O'Brien. He might use the

standard contended for by the prosecutor—"the child's welfare and the best interest of the state." This standard is so vague and subject to so many possible interpretations as to be no standard at all. He might formulate his own standard for review by the appellate courts of this state on a case-by-case basis. He might apply the standards set forth in JCR 1969, 11.

I agree with Justice BLACK "that a statute, invalid for want of standards according to the constitutional rule * * * [cannot] be validated by any rule of Court which, although in itself well within the constitutional powers of the Court, undertakes to supply what the statute does not." *Devereaux v Township Board of Genesee Twp,* 211 Mich 38 (1920), involved a statute providing for the issuing of permits by a township board for the conducting of poolrooms, dance halls, etc. The Court said (p 43):

"The statute in question provides no method for the application for licenses, contains no qualifications which the applicant must possess, provides no standard of fitness, makes no provisions as to the character of the structure or equipment to be used in the business regulated. It, in fact, attempts to confer upon the township board the arbitrary power to grant or refuse a license, according to its whim or caprice. Under all the authorities, we think this cannot be done."

Statutory defects, as this Court noted in *Rassner v Federal Collateral Society, Inc,* 299 Mich 206, 215 (1941), " * * * cannot depend upon the grace or favor of the court * * * ." See, also: *Burdick v Harbor Springs Lumber Co,* 167 Mich 673 (1911); *Trellsite Foundry & Stamping Co v Enterprise Foundry,* 365 Mich 209 (1961); *Ridenour v Bay*

Opinion by Black, J.

*County,* 366 Mich 225 (1962); *Milford v People's Community Hospital Authority,* 380 Mich 49 (1968).

If the Legislature is to treat some persons under the age of 17 differently from the entire class of such persons, excluding them from the beneficient processes and purposes of our juvenile courts, the Legislature must establish suitable and ascertainable standards whereby such persons are to be deemed adults and treated as such subject to the processes and penalties of our criminal law. The statute is unconstitutional because it lacks standards.

I vote to reverse the decisions of the lower courts.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.

BLACK, J. *(for affirmance).* The reviewable question is whether 1948 CL 712A.4;[1] MSA 27.3178 (598.4) is unconstitutional for want of standards governing probate determination of how a juvenile over the age of 15 years, accused of any act the nature of which constitutes a felony, may be waived to circuit court for trial. Division 2, having examined *Kent v United States,* 383 US 541; 86 S Ct 1045; 16 L Ed 2d 84 (1966) responded as follows

[1] Section 712A.4 was former section 26 of chapter XII ("Juveniles and Juvenile Division") of The Probate Code of 1939, No 288. Amended since in respects of no instant interest, it reads:

"Sec. 4. In any case where a child over the age of 15 years is accused of any act the nature of which constitutes a felony, the judge of probate of the county wherein the offense is alleged to have been committed may, after investigation and examination, including notice to parents if address is known, and upon motion of the prosecuting attorney, waive jurisdiction; whereupon it shall be lawful to try such child in the court having general criminal jurisdiction of such offense."

*(People v Andrew Fields,* 30 Mich App 390, 392–393):

"The Court, in *Kent,* did not hold that the statute was unconstitutional, but rather held that the procedure by which the waiver was obtained failed to satisfy constitutional principles relating to due process and the assistance of counsel. In the instant case however, the record reveals that the defendant was provided a hearing as well as the assistance of counsel. The defendant's counsel was given notice of the hearing and provided access to all necessary records. The court listed reasons in support of its decision to grant waiver. The standards enumerated in the *Kent* decision were fully satisfied in the instant case."

Upon application of defendant this Court granted review (384 Mich 833).

At the outset it should be noted that, prior to submission of defendant's appeal in the Court of Appeals, this Court after considerable study and review of successive drafts adopted the Juvenile Court Rules of 1969 (381 Mich cv–cxxxv). These rules were made effective March 1, 1969 and conclude with *"Rule 11. Waiver of Jurisdiction".*

It is unnecessary to reproduce Rule 11 here beyond pointing to the italicized headings of each division and the primary subdivisions thereof.

The Rule is headed *"Hearing; Quantum of Proof; Criteria for Waiver".*
Subdivisions (A) and (B) of .1 are headed respectively *"Phase 1: Showing of Probable Cause"* and *"Phase 2: Criteria for Waiver".*
.2 is headed *"Notice of Waiver Hearing".*
.3 is headed *"Right to Counsel".*
.4 is headed *"Access to Social Reports".*
.5 is headed *"Waiver Hearing Procedure".*
.6 is headed *"Waiver Order; Written Statement".*

Then, at the conclusion of Rule 11, there appears the following (authorized by the Court):

"Notes: Requirement of a finding of probable cause in waiver proceedings appears to have been held in *Green v United States* [1962], 113 US App DC 348 [308 F2d 303], and appeared to be the conclusion of conference and committee discussion. Notice provisions are drawn from requirements of *In re Gault* [1967], 387 US 1 [87 S Ct 1428; 18 L Ed 2d 527], and provisions for the right to counsel, access to social records, and written statements of findings from *Kent v United States* [1966], 383 US 541 [86 S Ct 1045; 16 L Ed 2d 84].)"[2]

Thus this Court has already read section 712A.4 as the Supreme Court in *Kent* has read the corresponding provision of the DC Code, that is to say, "[w]e believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." (Kent at 557.)

By the foregoing I do not mean to suggest that a statute, invalid for want of standards according to the constitutional rule, may be validated by any rule of Court which, although in itself well within the constitutional powers of the Court, undertakes to supply what the statute does not. It is submitted only that section 712A.4 comes within and is authorized by a well recognized exception to the rule prohibiting delegation of legislative powers. Here that exception is made by an express mandate of the Constitution declaring that the probate court and the judges thereof "shall have original jurisdiction in all cases of juvenile delinquents and

---

[2] Our action was unanimous. The minutes of our December 2–5, 1968 conference read ("Re Juvenile Court Rules"):

"Moved by Justice ADAMS, supported by Justice KAVANAGH, that the Juvenile Court Rules be adopted, to be effective March 1, 1969. Carried unanimously. A copy of the Rules so adopted is attached hereto."

dependents, except as otherwise provided by law" (Const 1963, art 6, § 15), in pursuance of which the Legislature by section 712A.4 has not attempted to delegate to the probate court the power to make a law or laws but, rather, has conferred upon that court "a mere legal discretion which is exercised in discerning the course prescribed by law and which, when discerned, it is the duty of the court to follow."[3]

Applying this to the issue at bar, I conclude that section 712A.4 is valid as against the attack made thereon. As for questions posed under *Kent v United States, supra,* it is sufficient to say that *Kent* did *not* hold the corresponding District of Columbia statute unconstitutional.[4] The Supreme Court *did* remand for a hearing *de novo* of the statutory issue of waiver of jurisdiction by the Juvenile Court, "consistent with this opinion". (p 565.) It did so with clear implication that the DC statute, valid despite the Court's observation *obiter* (that "[i]t [the statute] states the circumstances in which jurisdiction may be waived and the child held for trial under adult procedures, but it does not state standards to govern the Juvenile Court's decision as to waiver" [p 547]), should be interpreted and applied as this Court by aforesaid Rule 11 has already provided for section 712A.4. Here

[3] The quotation is taken from the text of 16 Am Jur 2d Constitutional Law, "§ 256. — *Vesting discretionary power in judiciary.",* pp 505–506, which in turn was taken directly from Chief Justice Marshall's opinion, for the Court, of *Osborn v The President etc of The Bank of the United States,* 22 US (9 Wheat) 738, 866; 6 L Ed 204 (1824).

For the same text, with greater citation of authorities, see 11 Am Jur Constitutional Law, § 228, pp 942–943.

[4] The conclusion of the first paragraph of the Court's opinion attests this plainly. It reads (p 543):

"Because we conclude that the Juvenile Court's order waiving jurisdiction of petitioner was entered without compliance with required procedures, we remand the case to the trial court."

there is no occasion for remand, the parties having assured us by stipulation that the not as yet tried Mr. Fields—unlike the tried and convicted Mr. Kent—will not be tried.

I vote to affirm.