61 Wis.2d 193 (1973)
212 N.W.2d 130
IN RE INTEREST OF F. R. W. (a minor):
STATE, Appellant,
v.
F. R. W., Respondent.
No. 302.
Supreme Court of Wisconsin.
Argued October 29, 1973.
Decided November 27, 1973.
*196 For the appellant the cause was argued by James H. McDermott, assistant attorney general, with whom on the briefs were Robert W. Warren, attorney general, and Robert D. Martinson, assistant attorney general.
For the respondent there was a brief by Coffey, Murray & Coffey, and Dennis P. Coffey and William M. Coffey, all of Milwaukee, and oral argument by Dennis P. Coffey.
CONNOR T. HANSEN, J.
On October 16, 1972, a detective of the city of Glendale, Milwaukee county, subscribed and swore to a juvenile delinquency petition in the interest of F. R. W. (hereinafter juvenile), a child *197 under the age of eighteen years. (Date of birth June 5, 1955.) This petition alleged that the juvenile had forcibly taken five dollars from Audrey T. Richter on October 13, 1972, contrary to sec. 943.32 (1) (a), Stats. (robbery). It was also alleged that at this time the juvenile had beaten Miss Richter about her head and face, contrary to sec. 940.20 (battery), and threatened to kill her if she screamed or tried to get away, meanwhile pressing an object between her shoulders indicating he was armed with a weapon while he was robbing and battering her, all contrary to sec. 943.30 (1) (threat to injure).
The juvenile court judge signed an order to show cause why jurisdiction of the children's court should not be waived pursuant to sec. 48.18, Stats., and attached to the order was a petition for waiver of jurisdiction in the form of an affidavit of the assistant district attorney setting forth the reasons waiver was deemed appropriate. These reasons were similar to the criteria for waiver adopted in Kent v. United States (1966), 383 U. S. 541, 86 Sup. Ct. 1045, 16 L. Ed. 2d 84.
William Coffey, the lawyer representing the juvenile, filed a motion to dismiss the petition for waiver, alleging that "... Section 48.18 of the Wisconsin Statutes fails to establish any ascertainable standards to limit or guide juvenile judges in the exercise of discretion in reaching decisions as to the waiver of juvenile jurisdiction and is void for vagueness because men of common intelligence must guess as to its meaning and may differ as to its applicability." Oral arguments were heard and briefs were filed by the respective parties.
The juvenile court judge ordered that the petition to waive jurisdiction over the juvenile be denied because sec. 48.18, Stats., was unconstitutional. The judge determined that the statute "... is vague and this vagueness, due to a lack of standards, fails to assure the uniformity of results which due process requires."
*198 No evidentiary hearing was held on the waiver petition.
The dispositive issue on this appeal is whether sec. 48.18, Stats., is unconstitutionally vague on its face and, therefore, violative of due process because it fails to specifically state waiver criteria or standards which must be considered in exercising the judicial discretion of waiving juvenile court jurisdiction?
However, before considering the issue presented by the state, we deem it appropriate to consider an issue not raised by either of the parties. That issue relates to whether the instant order is appealable.
This court has recognized that "It is the duty of this court, notwithstanding no issue has been raised by counsel, to take notice of a point which goes to the jurisdiction of this court on appeal and to dismiss the appeal on its own motion, if the order of the trial court is not an appealable order." Dombrowski v. Tomasino (1964), 24 Wis. 2d 16, 18, 127 N. W. 2d 786, quoting Yaeger v. Fenske (1962), 15 Wis. 2d 572, 573, 113 N. W. 2d 411. Also cited with approval in Teamsters Union Local 695 v. Waukesha County (1973), 57 Wis. 2d 62, 66, 203 N. W. 2d 707.
The state has appealed this order pursuant to sec. 252.017 (3) (e), Stats. In pertinent part, sec. 252.017 (3) provides as follows:
"(3) CHILDREN'S SECTION; COUNTY COURT. A county court branch which is assigned by the family court judges to the children's section shall, for the duration of the assignment, be governed by the following:
". . .
"(e) The orders and judgments of such court in all actions and proceedings tried before it may be appealed from, examined and reviewed by either the circuit court of said county, not as a trial de novo, but as a review of the record, or the supreme court in the same manner as other orders and judgments of the circuit court may be appealed from and reviewed."
*199 Sec. 252.017, Stats., was created by ch. 352, sections 11 and 12, Laws of 1969, effective February 6, 1970, and is applicable only to Milwaukee county (counties having a population of 500,000 or more).
This same legislative enactment also created sec. 48.037, Stats., which provides:
"48.037 Juvenile court; populous counties. In any county having a population of 500,000 or more the functions of the juvenile court shall be performed by the `Family Court' established under s. 252.017. Any provisions of this chapter which are in conflict with s. 252.017 shall be of no effect in their application to counties having a population of 500,000 or more."
Appealable orders are defined by sec. 274.33, Stats., which in pertinent part provides as follows:
"Appealable orders. The following orders when made by the court may be appealed to the supreme court:
". . .
"(3)When an order grants, refuses, continues or modifies a provisional remedy or grants, refuses, modifies or dissolves an injunction, sets aside or dismisses a writ of attachment, grants a new trial or sustains or overrules a demurrer, decides a question of jurisdiction, ..." (Emphasis supplied.)
When the juvenile challenged the constitutionality of sec. 48.18, Stats., as being void for lack of standards, he was, in effect, arguing that the juvenile court had no jurisdiction to act pursuant to that section. The juvenile court judge's determination that sec. 48.18 was unconstitutional was, in effect, a declaration that it had no jurisdiction to act pursuant to that section. The order of the juvenile court judge denied the petition for waiver, not on the merits but because of the court's conclusion that sec. 48.18 was unconstitutionally vague. This was also the reason the court granted the motion to dismiss the petition for waiver.
*200 "... A statute, unconstitutional on its face, is void from its beginning to the end; but a statute unconstitutional in an application is only void as applied in a certain time and to the specific circumstances." State ex rel. Commissioners of Public Lands v. Anderson (1973), 56 Wis. 2d 666, 672, 203 N. W. 2d 84.
Since the juvenile court judge determined sec. 48.18 to be unconstitutional and void, it follows that she properly determined that she was without jurisdiction to act pursuant to the petition for waiver.
"It is well settled that the juvenile court is a creature of the statutes. In re Johnson (1921), 173 Wis. 571, 181 N. W. 741; State v. Scholl (1918), 167 Wis. 504, 167 N. W. 830. This being so, the statutes must be resorted to in order to determine its jurisdiction...." State ex rel. Koopman v. Waukesha County Court Judges (1968), 38 Wis. 2d 492, 497, 157 N. W. 2d 623.
This is, therefore, an appealable order under sec. 274.33 (3), Stats., in that it "... decides a question of jurisdiction."
This is an unusual case insofar as the manner in which the juvenile court concluded it was without jurisdiction to act and in the manner in which an appeal has been brought directly to this court to review that determination. This appeal also presents a matter of statewide concern. Ordinarily this court will not allow a direct appeal from a discretionary determination by a juvenile court judge to waive or to refuse to waive jurisdiction over a particular juvenile. A review of a discretionary determination of a juvenile court judge should first be to the circuit court of the same county and in conformance with the procedural requirements of sec. 48.47, Stats.
Constitutionality of sec. 48.18, Stats.
Respondent argues that the waiver statute, sec. 48.18, Stats., "... fails to establish any ascertainable standards to limit or guide juvenile court judges in the *201 exercise of discretion, ..." and is, therefore, unconstitutional because of vagueness.
Sec. 48.18, Stats., Jurisdiction of criminal and civil courts over children 16 or older, provides as follows:
"... Except as provided in s. 48.17, the criminal and civil courts shall have jurisdiction over a child 16 or older who is alleged to have violated a state law or a county or municipal ordinance only if the juvenile court judge deems it contrary to the best interest of such child or of the public to hear the case and enters an order waiving his jurisdiction and referring the matter to the district attorney, corporation counsel or city attorney, for appropriate proceedings in a criminal or civil court. In that event, the district attorney, corporation counsel or city attorney of the county or municipality shall proceed with the case in the same manner as though the jurisdiction of the juvenile court had never attached."[1]
Essentially, sec. 48.18, Stats., provides for waiver only if the juvenile court judge "... deems it contrary to the best interest of such child OR of the public to hear the case...." (Emphasis supplied.)
In those instances when the juvenile court judge is required to determine whether to waive jurisdiction over a juvenile and weigh the best interest of a juvenile against the interest of the public, we are of the opinion that the Children's Code provides guidelines and standards for the exercise of judicial discretion. Sec. 48.01, Stats., provides as follows:
*202 "48.01 Title, intent and construction of chapter. (1) TITLE. This chapter may be cited as "The Children's Code."
"(2) INTENT. It is declared to be the intent of this chapter to promote the best interests of the children of this state through:
"(a) Juvenile courts adequately equipped to review each case on its individual merits under procedures designed to safeguard the legal rights of the child and his parents;
"(b) An integrated and co-ordinated program for all delinquent, neglected and dependent children both in their own community and while in the custody of the state;
"(c) Protection of children from unnecessary separation, either temporary or permanent, from their parents;
"(d) Adequate care and rehabilitation for all children who must be separated from their parents temporarily for the child's protection or that of the public;
"(e) Co-ordinated planning to assist local communities in promoting effective programs in health, education, recreation and welfare for the maximum development of all children and for the control of influences detrimental to youth;
"(f) Assurance for children needing adoptive homes that they will be placed in the best home available; protection of children from adoption by persons unfit to have responsibility for raising a child; protection for children who are legally established in adoptive homes from interference by their natural parents.
"(3) CONSTRUCTION. This chapter shall be liberally construed to effect the objectives in sub. (2). The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child and the interest of the public." (Emphasis supplied.)
Kent v. United States, supra, is a significant decision by the United States Supreme Court concerning the constitutional requirements of the juvenile waiver process.
The issue of whether the District of Columbia's waiver statute was unconstitutionally vague because of lack of standards was not specifically considered in Kent v. *203 United States, supra. However, the supreme court did state:
"We agree with the Court of Appeals that the statute contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child orsubject to the statutory delimitationshould waive jurisdiction. But this latitude is not complete. At the outset, it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a full investigation.' (Citation omitted.) The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary procedure...." (Emphasis supplied.) Kent v. United States, supra, pages 552, 553.
In Kent, supra, fundamental rights of a juvenile had been summarily denied by the juvenile court judge without the benefit of a full hearing, and it was the summary nature of this proceeding, by which the court had disposed of the juvenile rights, that was considered constitutionally impermissible.
"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearings; but we do hold that the hearing must measure up to the essentials of due process and fair treatment...." Kent v. United States, supra, page 562.
Wisconsin has consistently recognized that all legislation is presumed to be constitutional. Just v. Marinette County (1972), 56 Wis. 2d 7, 26, 201 N. W. 2d 761.
In Forest Home Dodge, Inc. v. Karns (1965), 29 Wis. 2d 78, 94, 95, 138 N. W. 2d 214, this court held: "Unless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid. (Citations omitted.)
*204 ..." In view of the presumption of constitutionality which must be afforded all legislation and the unmistakable legislative declaration in sec. 48.01 (3), Stats., and the enumerated guidelines contained in sec. 48.01 (2) to accomplish the purposes of the Children's Code, the trial court's conclusion, that "... [t] his lack of standards and guidelines does indeed invite the court to evaluate conduct on the basis of personal morality rather than reasoned application of objective rules," is unjustified.
Sec. 48.01 (2), Stats., sets forth guidelines which aid the juvenile court's determination of what is in the "best interests" of the juvenile. Moreover, the juvenile's best interest must be considered paramount. Sec. 48.01 (3). The factual considerations and the weight to be accorded them are matters left to the sound discretion of the juvenile court judge. Kent v. United States, supra, page 553.
Also, in Mikulovsky v. State (1972), 54 Wis. 2d 699, 707, 196 N. W. 2d 748, this court, in upholding the juvenile court judge's waiver of jurisdiction, held as follows:
"... In allowing juvenile courts to waive jurisdiction in cases involving minors between the ages of sixteen and eighteen, the legislature has removed the protective shield against criminal responsibility for those individuals who, in the court's opinion, would more appropriately be dealt with as an adult. In the instant case, the juvenile court found that it would be contrary to the best interest of the defendant or the public to hear the matter in juvenile court after a proper examination of relevant criteria on this issue."
In Mikulovsky, the juvenile court judge had considered the eight criteria of Kent v. United States, supra. This court recognized in a footnote in Mikulovsky, supra, page 704, fn. 3 that, "[a]lthough the court in Kent did not expressly adopt these criteria, the fact that they are appendixed to the court's opinion suggests their appropriateness *205 as guidelines for juvenile court waiver proceedings." Therefore, Mikulovsky is authority for the proposition that in Wisconsin these eight waiver criteria are relevant in determining whether to waive jurisdiction. This is not to say, however, that other considerations could not properly influence that decision. This court stands ready to determine whether the juvenile court judge has properly exercised his discretion in waiving jurisdiction. Mikulovsky supra; Gibson v. State (1970), 47 Wis. 2d 810, 177 N. W. 2d 912.
In State v. Doyal (1955), 59 N. M. 454, 460, 286 Pac. 2d 306, 310, the New Mexico Supreme Court, in upholding their juvenile-waiver statute against the challenge that it was unconstitutional because it lacked sufficient guidelines or standards by which the waiver decision should be determined, stated as follows:
"... It is a weighing of such considerations that might influence the judge to place the case for trial in the one or the other court. The considerations that might so move a judge are so multifarious, however, that to test validity of legislation by an omission to list them would be almost equivalent to attempting to name all the advantages of being upright and good."
The respondent argues that Doyal is too old to be considered good authority in that it was decided "... long before the current concern with the conflict between the parens patriae theory of the juvenile justice system and the `rights' of juveniles surfaced." Suffice it to say that only last year it was again argued that New Mexico's juvenile-waiver statute was unconstitutionally vague because it lacked definite standards and criteria to guide the discretionary determination to waive jurisdiction. In State v. Jimenez (1972), 84 N. M. 335, 336, 503 Pac. 2d 315, 316, the New Mexico Supreme Court held as follows:
"It is the conclusion of this Court that the case of State v. Doyal, 59 N. M. 454, 286 P. 2d 306 is dispositive *206 of appellant's contention that the statute violates Article II, Section 18 of our state constitution and the 14th Amendment of the Constitution of the United States. ..."
In State v. Owens (1966), 197 Kan. 212, 225, 226, 416 Pac. 2d 259, the Kansas Supreme Court held that the Kansas waiver statute was not constitutionally invalid for failing to state adequate standards. In discussing the issue, the court said:
"The argument that no standard is provided ignores the fact that the standard is expressly stated to be whether the child is `amendable to the care, treatment and training program available through the facilities of the juvenile court.' To require more precision than this would be impracticable. The factors entering into a juvenile judge's decision on disposition of a child brought before him are many and varied. This was recognized in State v. Doyal, 59 N. M. 454, 286 P. 2d 306 (1955), where a similar attack was made. The New Mexico waiver provision itself contained no express standard under which the court was to act. However, the Supreme Court held a sufficient standard was provided by the general purpose clause, which stated that the intent of the act was "for the rehabilitation and best interest and welfare of the juvenile delinquent." (p. 460) The court rejected an argument that the legislature was required to spell out with particularity the factors best calculated to promote this purpose, saying:
"`... The considerations that might so move a judge are so multifarious, however, that to test validity of legislation by an omission to list them would be almost equivalent to attempting to name all the advantages of being upright and good.'
"A similar attack was made in People v. Shipp, 59 Cal. 2d 845, 31 Cal. Rptr. 457, 382 P. 2d 577 (1963). The Supreme Court of California held the trial judge was required to exercise his discretion reasonably, in the furtherance of justice, and to serve the purposes of the juvenile court law, and the claim of invalidity was said to be without merit."
*207 Also, in Lewis v. State (1970), 86 Nev. 889, 893, 894, 478 Pac. 2d 168, the Nevada Supreme Court upheld their waiver statute and held as follows:
"We feel that the necessary standards are set out in the general purpose clause of the Juvenile Court Act, NRS 62.290, which reads as follows:
"`This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control, preferably in his own home, as will be conducive to the child's welfare and the best interest of the state, and that when such child is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which should have been given him by them.'"
In arriving at its decision in the instant case, the juvenile court considered People v. Fields (1972), 388 Mich. 66, 199 N. W. 2d 217, as persuasive authority for the fact that Wisconsin's waiver statute was unconstitutionally vague. In Fields, the Michigan Supreme Court declared their waiver statute unconstitutional because it lacked adequate standards. The Michigan statute provided in pertinent part, as follows:
"`In any case where a child over the age of 15 years is accused of any act the nature of which constitutes a felony, the judge of probate of the county wherein the offense is alleged to have been committed may, after investigation and examination, including notice to parents if address is known, and upon motion of the prosecuting attorney, waive jurisdiction; whereupon it shall be lawful to try such child in the court having general criminal jurisdiction of such offense.'" (Emphasis supplied.) (MCLA 712A.4; MSA 27.3178 [598.4]), cited in Fields, supra, page 73.
In essence, this statute simply says that the probate judge "... may ... waive jurisdiction ..." after complying with certain procedural requirements such as *208 a full investigation, notice to the parents, etc. Indicating the different periods of confinement to which the juvenile Andrew Fields would be subject depending upon whether juvenile court jurisdiction was retained, the Michigan court concluded:
"... Absent carefully defined standards in the statute itself which would justify such disparity of treatment, there is no way by which it can be determined what standard a probate judge should apply in a waiver proceeding. He might use the standards used by Judge O'Brien. [Kent standards.] He might use the standard contended for by the prosecutorthe child's welfare and the best interest of the state.' This standard is so vague and subject to so many possible interpretations as to be no standard at all. He might formulate his own standard for review by the appellate courts of this state on a case-by-case basis. He might apply the standards set forth in JCR 1969, 11." People v. Fields, supra, pages 75, 76.
People v. Fields, supra, is distinguishable on its facts because sec. 48.18, Stats., specifically contains the best-interests-of-the-child standard and the factors influencing this standard are partially described in sec. 48.01 (2). Moreover, it appears that a rehearing has been granted in Fields. See: People v. Launstein (1973), 45 Mich. App. 329, 203 N. W. 2d 540, 541 (dissenting opinion of Judge T. M. BURNS).
In Wisconsin, the juvenile court judge is directed by the legislature to exercise his discretion in determining whether to waive juvenile court jurisdiction on the basis of whether it is within the best interests of the child or the public. The interests of the child are considered paramount pursuant to sec. 48.01 (3), Stats. Moreover, the juvenile court judge is directed by sec. 48.01 (2) that the best interests of the child are promoted by various factors, including the consideration of each case on its "individual merits," eliminating unnecessary separation from parents, adequate care and rehabilitation for those children who must be separated, and maximizing the *209 development of the child and controlling influences detrimental to the youth. The many facts which could potentially bear upon these criteria for determining what is in the best interests of the child could never be specifically identified by statute. It is essential that the juvenile court judge exercise judicial discretion in conformance with the mandate of the provisions of ch. 48, and as it has been construed by this court.
The juvenile court in the instant case concluded:
"... The due process clause of the Fourteenth Amendment requires that state statutes provide fixed guidelines for judicial enforcement. Section 48.18 Wis. Stats. fails to meet this requirement."
We are of the opinion that there is a distinction which continues to be recognized between the adult and juvenile court systems.
"If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." McKeiver v. Pennsylvania (1971), 403 U. S. 528, 551, 91 Sup. Ct. 1976, 29 L. Ed. 2d 647.
See also: Rusecki v. State (1972), 56 Wis. 2d 299, 313, 201 N. W. 2d 832.
This court recognized in In re D. M. D. (a minor) v. State (1972), 54 Wis. 2d 313, 317, 195 N. W. 2d 594, that:
"... Due process and fair treatment are to mark juvenile proceedings as well as adult trials. Both have a common harbor, the fair and just disposition of matters before the court, but they may sail by different routes to the shared destination. Each must avoid the reefs of constitutionally assured protections, but they need not sail side by side in so doing. Any analogy established between steps in juvenile proceedings with stages in the processing of criminal cases may be arguably persuasive, but it is not controlling."
*210 In Miller v. Quatsoe (D. C. Wis. 1971), 332 Fed. Supp. 1269, 1275, it was held that where the lawyer appointed to represent the juvenile in a waiver hearing had only one hour's preparation time and neither the juvenile nor his parents had been notified that such a hearing would take place, much less given the date and time of the hearing, it was a violation of the juvenile's right to due process. In Miller, supra, page 1275, it was also recognized that:
"Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against the safety, needs, and demands of society. Further, besides judging the `whole man' as opposed to the act with wide as opposed to limited discretion, the juvenile judge may perform his task in a comparatively informal proceeding. Kent, supra, at 562, 86 S. Ct. 1045."
Various aspects of the Children's Code are currently under consideration by the legislature. The 1973 Senate Bill 99, introduced by the Committee on Judiciary and Insurance, has not been referred out of committee. This Bill proposes the repeal of sec. 48.18, Stats., and its recreation as sec. 48.245.[2] As we view the provisions of proposed sec. 48.245, it can generally be said that they constitute a codification of existing case law.
We conclude that sec. 48.18, Stats., is not subject to an attack for vagueness. Since we determine that sec. 48.18 is a constitutional enactment, we do not reach the question of whether the respondent has met his burden of proof that the statute is unconstitutional beyond a reasonable doubt.
By the Court.Order reversed.
NOTES
[1] Juvenile waiver provisions have become an increasing source of concern for legal writers. Mountford and Berenson, Waiver of jurisdiction: The last resort of the juvenile court, 18 Univ. of Kan. L. Rev. (1969), 55; Schornhorst, The waiver of juvenile court jurisdiction: Kent revisited, 43 Ind. L. J. (1968), 583; Zekas, Constitutional lawJuvenile waiver statuteDelegation of legislative power to judiciary, 1973 Wis. L. Rev. 259; Butler, Juvenile court waiver: The questionable validity of existing statutory standards, 16 St. Louis Univ. L. J. (1972), 604; Buss, Waiver of jurisdiction in Wisconsin juvenile courts, 1968 Wis. L. Rev. 551.
[2] Since State v. Doyal, supra, and State v. Jiminez, supra, New Mexico enacted legislation similar to proposed sec. 48.245, Stats.