**STATE of Iowa, Appellee,**

v.

**John Lee SPECK, Appellant.**

**No. 58620.**

Supreme Court of Iowa.

May 19, 1976.

James M. Sullivan, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Michael W. Coriden, Asst. Atty. Gen., Ray A. Fenton, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and REYNOLDSON, JJ.

MASON, Justice.

This case is here on appeal by John Lee Speck from judgment imposing sentence on his conviction by a jury of robbery with aggravation contrary to sections 711.1 and 711.2, The Code, 1973. At the time of the offense giving rise to his arrest Speck was 17 years of age, having been born January 20, 1958.

Speck and a companion robbed the Douglas Avenue Fina Station in Des Moines the evening of January 6, 1975. Donald Lundeen, the man on duty at the station, testified defendant and another entered the station wearing ski masks. Defendant went to the beer cooler and selected a six pack while the companion remained near the door. As defendant approached the counter with the beer he displayed a loaded .38 caliber revolver, pointed it at Lundeen's head and said, "This is it, hand it all over." Lundeen drew the money out of the register and attempted to put it in a sack. Having trouble with the sack he had, Lundeen reached under the counter to find one of the right size. At this point, Lundeen testified defendant "told me to get away from the counter or he would blow my head off."

Des Moines police officer Mark Boyd, who arrested defendant, testified Lundeen did not mention this threat in his statement to the officer. Furthermore, defendant himself testified he participated in the robbery and used an unloaded revolver, but denied threatening Lundeen in this manner.

Following defendant's arrest, proceedings against him were commenced in juvenile court when a Polk county probation officer filed a petition alleging Speck was a delinquent child. Upon motion by the county attorney, juvenile court judge Don L. Tidrick transferred the case to the county attorney for disposition in the adult criminal courts for the following reasons: (1) there was a prima facie case defendant committed, by force, violence, and putting into fear, a robbery with a gun with intent

to kill or maim if resisted; (2) Speck, a school dropout, had previously appeared in juvenile court, had been committed to the Boys Training School and upon violation of a probationary release, had been returned to Eldora; and (3) since the crime was a premeditated and violent one not normally committed by youths and one which would endanger the mental health and life of other persons, it was in the best interest of the child and state to transfer the matter.

February 3 a county attorney's information was filed charging defendant with the crime of robbery with aggravation. February 28 defendant filed a motion to dismiss which alleged in pertinent part section 232.72, providing for the relinquishment of juvenile court jurisdiction, violates due process of law and equal protection of the law in that the standard prescribed is unconstitutionally vague. March 3 Judge Thomas S. Bown overruled the motion, whereupon the case proceeded to trial by jury before Judge John N. Hughes. Defendant was found guilty and on June 6 he was sentenced to a term not to exceed 25 years at the Men's Reformatory in Anamosa.

■ Defendant maintains the standard "best interest of the minor or the public" employed in section 232.72, The Code, is unconstitutionally void for vagueness. He also contends the trial court erred in refusing to give his requested instruction on reasonable doubt and instead gave a prolix and confusing instruction which misdirected the jury and as a result lessened the State's burden of proof. In addition defendant challenges the court's refusal to give his requested instruction on intent and misdirected the jury by failing to tell them that where circumstantial evidence alone is relied on the evidence must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence. The foregoing contentions present the issues for review.

I. Defendant initially contends section 232.72, The Code, is unconstitutionally vague. Neither the procedures invoked below nor the reasons upon which transfer was based are attacked on appeal. Simply the question of the facial vagueness of the standard "best interest of the minor or the public" is presented here for review.

It should at the outset be noted section 232.1 provides chapter 232 is to " * * * be liberally construed to the end that each child coming within the jurisdiction of the juvenile court shall receive, preferably in his home, the care, guidance, and control that will conduce to his welfare and the best interests of the state, and that when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which he should have been given."

Section 232.72 is, then, to be interpreted in this light when a juvenile court considers transferring a delinquent to criminal court. The discretion granted the judge is wide in view of statutory wording. In pertinent part, section 232.72 reads:

"When a petition alleging delinquency is based on an alleged act committed after a minor's fourteenth birthday, and the court, after a hearing, deems it contrary to the best interest of the minor or the public to retain jurisdiction, the court may enter an order making such findings and referring the alleged violation to the appropriate prosecuting authority for proper action under the criminal law. * * * ."

The question of this statute's unconstitutionality is one of first impression in this jurisdiction. The court is guided, however, by several principles well established in this state.

"It is well settled regularly enacted statutes are accorded a strong presumption of constitutionality. * * * [citing authorities].

"Then too, where the constitutionality of a statute is merely doubtful, this court will not interfere. * * * [citing authorities].

"And legislative enactments · will not be held unconstitutional unless they are shown to clearly, palpably and without doubt infringe upon constitutional rights. * * * [citing authorities].

"Finally, a party attacking any statutory enactment must negate every reasonable

basis of support for such statute. * * * [citing authorities]." *State v. Kueny,* 215 N.W.2d 215, 216–217 (Iowa 1974). See also *State v. Aldrich,* 231 N.W.2d 890, 894 (Iowa 1975).

In *State v. Willis,* 218 N.W.2d 921, 923 (Iowa 1974), the vagueness concept was described as follows:

"* * * A statute is void under the Due Process Clause if it 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *.' *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). A penal statute must give a person of ordinary intelligence fair warning of what is prohibited, and, in order to avoid arbitrary and discriminatory enforcement, it must provide an explicit standard for those who apply it. *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227 (1972); *State v. Robinson,* 183 N.W.2d 190, 193 (Iowa 1971)."

This statement from *In Re Juvenile,* 364 Mass. 531, 306 N.E.2d 822, 827 (1974), is pertinent at this point:

"The 'void for vagueness' argument usually rests on one or both of two theories, either that there has been a delegation of legislative authority with standards for its exercise which are not sufficient to bar arbitrary or discriminatory administrative action or that the statute is so unclear in what it permits or forbids that a person cannot reasonably know what the law expects of him."

Section 232.72, The Code, is not a penal statute "which either forbids or requires the doing of an act" to constitute a criminal offense. It is a procedural statute and does not place anyone in the position of being unable to determine whether his conduct is against the law. It is a statute which is concerned with a judicial function relating to the procedure to be selected under which an alleged violation of law will be processed. See *In Re Juvenile,* 306 N.E.2d at 827 and *In Re Bullard,* 22 N.C.App. 245, 206 S.E.2d 305, 307.

Two courts at least have not applied the vagueness concept to juvenile transfer statutes. Thus, in the case of *In Re Bullard,* 22 N.C.App. at 247, 206 S.E.2d at 307, the court held North Carolina's statute, which employs the standard "needs of the child or the best interest of the State," is not a penal statute " * * * ' "which either forbids or requires the doing of an act" ' to constitute a criminal offense. It is a procedural statute * * * [which] does not place anyone in the position of being unable to determine whether his conduct is against the law. It is a statute which sets out a method of procedure and is sufficiently explicit to meet constitutional requirements."

A similar distinction based upon "procedure" was employed by the Massachusetts court in the case of *In Re Juvenile,* 306 N.E.2d at 827. [The reasoning was reaffirmed in *Stokes v. Commonwealth,* 336 N.E.2d 735, 746 (Mass.1975)]. The court there thought the "public interest" standard expressed in the statute was " * * * an adequate guide to the carrying out of the judicial function of declining juvenile jurisdiction. Similar general standards contained in comparable statutes in other States have been upheld. * * * [citing authorities]."

However, this court has said that, " ' * * [a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " *State v. Kueny,* 215 N.W.2d at 217. And in the same vein, Justice Douglas has stated that " * * * vague laws *in any area* suffer a constitutional infirmity." *Ashton v. Kentucky,* 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966). (Emphasis supplied). See also *Buckley v. Valeo,* 171 U.S.App.D.C. 172, 519 F.2d 821, 874 (1975).

In *Giaccio v. State of Pennsylvania,* 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447, the Court stated:

" \* \* \* Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute. So here this state Act whether labeled 'penal' or not must meet the challenge that it is unconstitutionally vague."

In *Henkes v. Fisher,* 314 F.Supp. 101, 107 (D.Mass.1970), the district court noted:

"Vagueness analysis, however, has generally been limited to attacks either on state criminal statutes where the vice of imprecision is the failure to give notice of the conduct to be avoided, \* \* \* [citing authority]; or on regulatory statutes whose vague and indefinite language permit an unconstitutional state intrusion into areas of private liberties specifically protected by the Bill of Rights, \* \* \* [citing authorities].

"Although the present case falls into neither of these categories, we do not conclude that vagueness analysis is wholly inappropriate. Rights protected by the liberty assurance of the due process clause are not limited to those expressly guaranteed by one or more of the first eight amendments. \* \* \* [citing authority]. *Vagueness analysis has some relevance wherever due process is demanded.* \* \* [citing authority]." (Emphasis supplied). Affirmed, 400 U.S. 985, 91 S.Ct. 462, 27 L.Ed.2d 436.

The materiality of the emphasized portion of the above quotation becomes clear when read in light of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, where it was held due process of law requires implementation of certain procedures in a waiver of jurisdiction action by a juvenile court. Thus, the void for vagueness doctrine is logically material to statutes providing for waiver of jurisdiction by juvenile courts.

As alluded to above, the crux of defendant's complaint is that the statutory standard is so uncertain and capable of so many interpretations as to be no standard at all.

Of course, the standard "best interest of the minor or the public" affords wide discretion to the juvenile judge. As stated in *Kent,* " \* \* \* the statute contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or—subject to the statutory delimitation— should waive jurisdiction. But this latitude is not complete. At the outset, it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, \* \* \*. The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary procedures." 383 U.S. at 552–553, 86 S.Ct. at 1053, 16 L.Ed.2d at 92.

*Gonyaw v. Gray,* 361 F.Supp. 366, 370 (D.Vt.1973), has this statement:

"\* \* \* The mere fact that a statute vests an official with discretion in seeking legitimate objectives does not render that statute void for vagueness merely because the possibility exists that discretion may be abused. There may be borderline cases in which it is difficult to determine where the facts will fall, but such indefiniteness will not condemn the statute. \* \* \* [citing authority]. Here the exercise of discretion is tempered by real constraints, and remedies for its abuse are readily available."

Along this same line is this statement from *Whitfield v. Simpson,* 312 F.Supp. 889, 897 (E.D.Ill.1970):

"An act will not be held invalid merely because it might have been more detailed in its provisions, and a statute need not specify every detail of its administration but is sufficient if it contains general principles to be followed and leaves the details of ministerial acts in the hands of those charged with the duty of administering the act. Accordingly, the omission in a statute to specify every detail, step by step, and action by action, will not render the statute vague, indefinite, or uncertain from a constitutional viewpoint. \* \* \* [citing authority]."

Expressing the same principle in somewhat different words is this statement from *Breed v. Jones*, 421 U.S. 519, 537, 95 S.Ct. 1779, 1789–1790, 44 L.Ed.2d 346:

" * * * In *Kent v. United States*, 383 U.S., at 562, 86 S.Ct. at 1057, the Court held that hearings under the statute there involved 'must measure up to the essentials of due process and fair treatment.' However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain and embarrassment of two such proceedings."

Thus some courts have held the general statutory standards set forth in juvenile transfer statutes to be constitutionally adequate in the face of vagueness arguments. The Wisconsin court noted, " * * * the juvenile court judge is directed by the legislature to exercise his discretion in determining whether to waive juvenile court jurisdiction on the basis of whether it is within *the best interests of the child or the public.* The interests of the child are considered paramount pursuant to sec. 48.01(3), Stats. Moreover, the juvenile court judge is directed by sec. 48.01(2) [similar to section 232.1, The Code, set out above] that the best interests of the child are promoted by various factors, including the consideration of each case on its 'individual merits,' eliminating unnecessary separation from parents, adequate care and rehabilitation of those children who must be separated, and maximizing the development of the child and controlling influences detrimental to the youth. *The many facts which could potentially bear upon these criteria for determining what is in the best interests of the child could never be specifically identified by* statute. It is essential that the juvenile court judge exercise judicial discretion in conformance with the mandate of the provisions of ch. 48, and as it has been construed by this court." *In Re F.R.W.*, 61 Wis.2d 193, 212 N.W.2d 130, 138, cert. den., 416 U.S. 974, 94 S.Ct. 2000, 40 L.Ed.2d 563. (Emphasis supplied).

The court in its decision in *In Re F.R.W.* collects and analyzes earlier cases of the Wisconsin court as well as decisions from other jurisdictions where the constitutionality of transfer statutes in juvenile legislation has been challenged on the ground of vagueness. In our view it is persuasive authority.

In *Clemons v. State*, 317 N.E.2d 859, 862 (Ind.App.1974), the court of appeals held, " * * * the standard for 'the child's welfare and the best interests of the state' expressed in I.C. 1971, 31–5–7–1 is a sufficient guideline to save I.C. 1971, 31–5–7–14 from being void on its face for vagueness. Similar general standards have been upheld in other jurisdictions answering attacks on their waiver statutes for being unconstitutionally vague. * * * [citing authorities]."

The *Clemons* court also recognized the power of appellate review as a check upon discretionary decision making. Thus, if the statement of reasons for waiver (required by *Kent*) is not such to render transfer conducive to "the child's welfare and the best interests of the state," the waiver order would be reversed on appeal. 317 N.E.2d at 863.

The supreme court of Missouri has held the phrase " * * * 'to the child's welfare and the best interest of the state,' affords adequate and sufficient standards to guide the court in carrying out the legislative directive and intent. * * *." *State v. Williams*, 473 S.W.2d 382, 384 (Mo.1971). See also *State v. Jimenez*, 84 N.M. 335, 503 P.2d 315, reaffirming *State v. Doyal*, 59 N.M. 454, 286 P.2d 306, which held the standard "rehabilitation and best interest and welfare of the juvenile delinquent" not void for vagueness; and *State ex rel. Juv. Dept. of Washington Cty. v. Slack*, 17 Or.

App. 57, 520 P.2d 905, 906, holding a statute similar to section 232.72, The Code, set out criteria for determining whether a juvenile should be transferred to the criminal court.

Another line of well reasoned cases finds its basis upon the idea that "although guidelines do not appear in a statute authoritative judicial construction or administrative interpretation by an agency charged with its implementation may cure an otherwise unconstitutionally vague statute. * * * [citing authorities]." *Avard v. Dupuis*, 376 F.Supp. 479, 482 (D.N.H.1974). See also *State v. Williams*, 238 N.W.2d 302, 306 (Iowa 1976), where this court ruled that " * * * if a statute 'can be made constitutionally definite by a reasonable construction, * * * this Court is under a duty to give the statute that construction.' * * * [citing authorities]."

This line of authority has either set forth is own criteria or adopted those suggested by the Supreme Court in the appendix to *Kent*, 383 U.S. at 566–569, 86 S.Ct. at 1060, 16 L.Ed.2d at 100–101. See *Davis v. State*, 297 So.2d 289, 293 (Fla.1974); *State v. Gibbs*, 94 Idaho 908, 500 P.2d 209, 216–217 (1972); *Lewis v. State*, 86 Nev. 889, 478 P.2d 168, 170–171 n.2 (1970); *Sherfield v. State*, 511 P.2d 598, 602 (Okl.Cr.1973); *In Re Welfare of Burtts*, 12 Wash.App. 564, 530 P.2d 709, 713 (1975); and *Knott v. Langlois*, 102 R.I. 517, 231 A.2d 767, 773 (1967), where the court ordered the "family court" to promulgate a list of criteria.

It should be noted defendant refers this court to a case research reveals is the only decision holding a standard similar to that of section 232.72, The Code, void for vagueness. See *People v. Fields*, 388 Mich. 66, 199 N.W.2d 217.

In addition to the fact *Fields* stands against vast weight of authority to the contrary, at least two courts have refused to follow its reasoning. *In Re Juvenile*, 306 N.E.2d at 827, n.7; *Clemons v. State*, 317 N.E.2d at 862. *Clemons* also noted the case has been criticized in Note, Constitutional Law—Juvenile Waiver Statute—Delegation of Legislative Power to Judiciary, 1973 Wis. L.Rev. 259. As pointed out in *Clemons*, 317 N.E.2d at 862, n.3, "The Supreme Court of Michigan in an opinion on rehearing has expressed regret that the non-delegation doctrine was adopted as the vehicle for declaring their waiver statute unconstitutional. See *People v. Fields* (1974) 391 Mich. 206, 216 N.W.2d 51, 53."

While this court has not previously been faced with a vagueness challenge to section 232.72, The Code, it was noted in *State v. Halverson*, 192 N.W.2d 765, 769 (Iowa 1971), cited in *Breed v. Jones*, 421 U.S. at 537, 95 S.Ct. at 1790, 44 L.Ed.2d at 361, courts in transfer hearings are " * * * concerned with such issues as the amenability of the child to the rehabilitative measures available to the juvenile court, the necessity of safeguarding the public from the child, and the heinousness of the alleged offense." In the foregoing statement this court recognized at least five of the factors set forth in *Kent*. See *Kent* factors 1, 2, 3, 7 and 8. Although the Court in *Kent* did not expressly adopt the criteria we have referred to in this opinion, the fact they are appendixed to the Court's opinion suggests their appropriateness as guidelines for juvenile court waiver proceedings. *Mikulovsky v. State*, 54 Wis.2d 699, 704, 196 N.W.2d 748, 751, n.3. Also worthy of note is the observation the juvenile court's order of waiver in the case before us included *Kent* factors 1, 2, 3, 4, 6, 7 and 8.

The juvenile judge's discretion in making a determination to either waive or retain jurisdiction is not an unfettered one without standards essential to the intelligible and guided exercise of that discretion. Standards to be used by him are derived from the structure and purpose of the juvenile system itself. Section 232.1, supra, declares the purpose of chapter 232 is to secure for each child within its provisions such care, guidance and control that will conduce to his welfare and the best interests of the state. Section 232.72, also set out earlier, has rational and definable standards that can be applied by a judge in determining whether to retain or transfer jurisdiction of a juvenile. It provides that the court after a hearing determine wheth-

er it is contrary to the best interests of the minor or the public to retain jurisdiction. Implementation of these standards may be guided by consideration of the criteria set out in *Kent* as well as any others which may arise under the particular facts.

The standard for "the child's welfare and the best interests of the state" is sufficient notice to the juvenile to enable preparation for the waiver hearing and to protect him from arbitrary, capricious or discriminatory decision-making.

We hold section 232.72, The Code, is not open to attack on the ground of vagueness in any of the respects urged by defendant. Defendant's contention is without merit.

■ II. Defendant next argues Instruction 3 on reasonable doubt is prolix and confusing and lessened the State's burden of proof. Thus, defendant contends he was denied a fair trial and due process of law.

The trial court opted to utilize the uniform instruction "presently approved by the Supreme Court" and noted the uniform instruction employed in substance the requested instruction. It should be pointed out the second paragraph of Instruction 3 is virtually identical to uniform instruction 501.11. While the first paragraph is considerably longer than that of the uniform instruction, defendant's argument on appeal does not center upon this portion of Instruction 3.

The main thrust of defendant's attack is that the trial court's instruction contains "three definitions of reasonable doubt. It relates reasonable doubt to ' * * * a full and abiding conviction of the guilt of the Defendant * * *.' It relates such doubt to ' * * * wavering or vacillating * *' of the jurors' minds. It relates such doubt to the actions of the prudent man in ' * * the graver and more important affairs of life.' " It is argued the three definitions are not significantly different but that a juror might suppose they are, which would "only lead to confusion."

Notwithstanding any question as to the sufficiency of the objection Instruction 3 is prolix and confusing, see *State v. Bell*, 223 N.W.2d 181, 185 (Iowa 1974), it is clear the trial court's instruction did not constitute reversible error. The portions of the instruction about which defendant complains have long been employed in Iowa to define the reasonable doubt concept. In *State v. McGranahan*, 206 N.W.2d 88, 92 (Iowa 1973), this court lent at least tacit approval of the three definitions set out above by stating:

" * * * We do not hold all or any of these three frames of reference must be included or described in the instruction but some standard should be.

We do not wish to be understood as holding or intimating trial courts are bound by any model or form in formulating instructions. We especially do not wish to be understood as intimating brief and succinct instructions are in any way discouraged. However an understanding of reasonable doubt is crucial to the deliberations of the jury in nearly every criminal case. * *."

Later, in *State v. Finnegan*, 237 N.W.2d 459, 460 (Iowa 1976), it was noted that " * * * no particular model or form is required in advising the jury concerning the meaning of reasonable doubt as long as a suitable standard is given.

"In the present case, the trial court afforded the jury such a guideline, although not in the precise language requested by defendant. * * *."

A reading of the record from *Finnegan* discloses the fact the trial court submitted the uniform instruction on reasonable doubt—a "suitable standard."

Although the instruction submitted was lengthy and not in the form requested by defendant, these factors are not in and of themselves prejudicially erroneous. See *State v. Brandt*, 182 N.W.2d 916, 918 (Iowa 1971) and *Van Treese v. Holloway*, 234 N.W.2d 876, 877 (Iowa 1975).

We find no merit in defendant's challenge to the court's failure to give his requested instruction on reasonable doubt or in his attack on the instruction given on this aspect of the case.

III. Defendant's final contention urged as a reason for reversal concerns the instruction on intent.

He requested the following:

"Where intent is an essential element of the offense charged, it must be proved beyond a reasonable doubt. The intent with which an act is done is capable of proof by direct evidence or circumstantial evidence. Where circumstantial evidence alone is relied on, the evidence must be entirely consistent with the Defendant's guilt and wholly inconsistent with any rational hypothesis of the Defendant's innocence."

The trial court gave virtually the uniform instruction on intent and refused to submit defendant's requested instruction because there was direct evidence in the record.

Defendant's objection and exception to the trial court's instruction consisted of the assertion the instruction's phraseology that intent is seldom capable of direct proof and positive evidence "virtually invited [the jury] to look into matters of circumstantial evidence. Thus, it is claimed there existed the attendant duty to instruct upon circumstantial evidence.

In *State v. Boyd*, 224 N.W.2d 609, 612 (Iowa 1974), this court declared that "where * * * intent is an essential element of a crime, it may be proven by either direct or circumstantial evidence. * * * [citing authority]. We have also noted intent is ordinarily hard to prove except by circumstantial evidence. * * * [citing authority]. When the evidence is circumstantial *alone*, it must be entirely consistent with defendant's guilt and inconsistent with any rational theory of innocence. * * * [citing authority]." (Emphasis supplied).

However, the evidence here was not entirely circumstantial. *Specific testimony* was adduced during trial defendant pointed a loaded pistol at the station clerk's head, obviously demanded money ("hand it all over") and threatened to blow the attendant's head off.

Where there is substantial direct evidence in the record tending to support conviction, refusal of the trial court to give a requested instruction pertaining to the burden of proof justifying a conviction where circumstantial evidence is relied on is not error, notwithstanding there are some circumstances to be considered. See *State v. Peterson*, 196 N.W.2d 436, 438–439 (Iowa 1972); *State v. Post*, 255 Iowa 573, 584, 123 N.W.2d 11, 18; and authorities cited in these opinions.

Here there was direct evidence in the record of defendant's intention, "if resisted, to kill or maim the person robbed" (section 711.2, The Code, 1973). The trial court was correct in refusing defendant's requested instruction.

The case is—Affirmed.