STATE of Iowa, Appellee,

v.

Daniel OCHOA, Appellant.

No. 58398.

Supreme Court of Iowa.

Aug. 30, 1976.

James M. Sullivan, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown, Asst. Atty. Gen., Ray A. Fenton, County Atty., for appellee.

Heard before REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES and HARRIS, JJ.

MASON, Justice.

February 3, 1975, a county attorney's information was filed in the clerk's office of the Polk district court charging Daniel Ochoa with the crime of malicious injury to a building in violation of section 714.1, The Code. At arraignment defendant entered a plea of not guilty. Before trial defendant filed "motion to inspect criminal histories."

The motion was overruled and the matter was tried to a jury which returned a verdict convicting defendant of the offense charged. He appeals from judgment imposing sentence on that conviction.

Defendant maintains his appeal presents the following questions for review: (1) whether the court erred in refusing defendant's request to inspect the State's witnesses' criminal histories in order to prepare to impeach them; (2) whether the court's instruction on reasonable doubt was prolix and confusing which misdirected the jury and lessened the State's burden of proof; (3) whether the court's instruction on intent was erroneous in failing to include the general rule on circumstantial evidence; and (4) whether the court erroneously instructed the jury to reconcile the evidence so that all of it could have weight and effect.

The events giving rise to the charge occurred at 3:00 a. m., January 1, 1975, at 852 Eighth Street in Des Moines. Genaro (Denato) Mata, Judy Ballard and her infant daughter lived together in a ground floor apartment at that address. Mr. Mata and Miss Ballard, a high school student, were acquaintances of defendant. Ballard testified at one time several years earlier, she was "supposed to be" defendant's girlfriend.

In any event, it appears from the evidence defendant and his two brothers, Martin and Alfredo, drove to the residence that morning seeking revenge for a previous fight between defendant and Mata, one in which the latter was victor. The brothers apparently pounded on the door and yelled for Mata to come out.

Defendant's version of the story has it that Mata opened the door at which time the defendant ducked down. In some manner, this procedure caused defendant to break a window with his arm.

Defendant and one brother (the other waited in the car) ran from the scene and drove off when they thought they saw "something" in Mata's hand as Mata had earlier warned them he had a gun. This story varies somewhat with defendant's statement to the police. At that time, defendant claimed Mata exited the apartment and pushed defendant which caused his elbow to break the window.

The apartment's residents imparted a different version of the events. All three brothers arrived at the apartment and were shouting and kicking the door. It does not appear Mata ever went outside, and when defendant and his brothers concluded Mata would not come out, defendant threw a large concrete brick (exhibit 1) through a window of the apartment. Miss Ballard actually saw defendant do this. This deed accomplished, the three ran to their car and drove off.

Apartment manager Aurora Muniz, who lived in a nearby building, heard the crash of breaking glass and saw the three brothers, whom she previously knew, run from the scene. She then rushed to the Mata apartment and observed "a whole bunch of glass all scattered." It was also brought out that at the time of trial, almost three months later, the window had not as yet been repaired.

Defendant's motion for directed verdict made at the close of the State's evidence and renewed at the close of all evidence was overruled. Defendant took exceptions to the court's failure to give three requested instructions and objected to certain specified instructions. Defendant's motion for new trial was overruled and this appeal followed.

■ I. The trial court's denial of defendant's motion to inspect criminal histories is asserted to be reversible error. As stated, this motion was filed before trial and requested the State be required to permit defense counsel to inspect and make copies of the complete criminal histories of the State's witnesses.

Defendant stated the grounds for his motion in this fashion:

"1. That the Defendant has *the right to impeach the State's witnesses by introducing evidence of their prior felony convictions* under the Sixth Amendment, United States Constitution, which is made applica-

ble to the States under the Fourteenth Amendment, United States Constitution; Iowa Constitution, § 10, Art. I, § 622.17, The Code, 1975.

"2. That § 622.17, permits proof of prior felony convictions in only two ways: first, by interrogation of the witness himself and second, by introduction of the record of the conviction.

"3. That the Defendant has no access to complete and reliable information which would enable him to obtain the records of the State's witnesses prior convictions.

"4. That the State has complete and reliable information on the criminal histories of its witness and with this information the Defendant would be able to obtain the records of the State's witnesses prior convictions.

"5. That insofar as Chapter 749B, The Code, 1975 (Chapter 294, 1973 Regular Session, 65th G.A.) prohibits the State from furnishing the Defendant with the criminal histories of its witnesses or prohibits the Defendant's use of such histories to impeach the State's witnesses, such statutes violate the Sixth Amendment, United States Constitution, which is made applicable to the State by the Fourteenth Amendment, United States Constitution and Iowa Constitution, § 10, Art. I." (Emphasis supplied).

Defendant also requested the trial court rule chapter 749B, The Code, 1975, unconstitutional insofar as it prohibits defense counsel inspection of criminal histories or their utilization to impeach the State's witnesses.

In denying the motion, the trial court held the motion was "not confined to admissible felony convictions and includes juvenile court records, arrests without convictions and other raw data." The court also noted defendant had "failed to show Chapter 749B is unconstitutional by the necessary quantum of proof."

Following submission of the case after oral arguments by both sides an order was entered by this court directing a limited remand to the trial court for the purpose of conducting an in camera hearing at which the State was directed to produce the criminal histories of all witnesses used by it in this prosecution and directing the trial court to permit defense counsel to inspect said "criminal histories" in his presence and in the presence of the prosecuting attorney and to proceed with the procedure outlined in *State v. Mayhew,* 170 N.W.2d 608, 614 (Iowa 1969).

Pursuant to this order the trial court promptly held a hearing at which the State produced a criminal history of all witnesses used by it in this prosecution. Defendant was permitted to inspect the report in the presence of the court and the prosecutor. After inspecting the histories, the court found that none of the State's witnesses had any criminal history or record. That order was certified to this court and is now before us.

In light of this record it is our opinion defendant suffered no prejudice by reason of the trial court's order denying his pretrial motion for inspection of the "criminal histories." Hence, we do not reach the constitutional attack made against chapter 749B, The Code, since we prefer to decide cases on nonconstitutional grounds when possible even though the constitutional issue has been properly presented. See *State v. Thomas,* 219 N.W.2d 3, 5 (Iowa 1974).

II. Defendant's contention that the trial court's instruction on reasonable doubt is confusing because it presents three definitions of reasonable doubt is the basis for the second issue presented for review. The argument urged here was presented in the same fashion in *State v. Speck,* 242 N.W.2d 287, 294 (Iowa 1976), and found to be without merit. We reach the same conclusion here.

This statement from *State v. Finnegan,* 237 N.W.2d 459, 460 (Iowa 1976), which is referred to in *Speck,* is pertinent here:

" * * * As we pointed out in *State v. McGranahan,* 206 N.W.2d 88, 91, 92 (Iowa 1973), no particular model or form is required in advising the jury concerning the meaning of reasonable doubt as long as a suitable standard is given.

"In the present case, the trial court afforded the jury such a guideline, although not in the precise language requested by defendant. Defendant has no cause to complain about the instruction as given. See *Van Treese v. Holloway,* 234 N.W.2d 876, 877 (Iowa 1975)."

III. The third contention defendant urges as a ground for reversal concerns the instruction on intent. He insists the trial court erred in refusing to submit his requested instruction.

The significant difference between the requested instruction and one actually given is that the former included the sentence, "where circumstantial evidence alone is relied on, the evidence must be entirely consistent with the defendant's guilt and wholly inconsistent with any rational hypothesis of the defendant's innocence."

The trial court opted to utilize the uniform instruction, which reads:

"Where intent is an essential element of the offense charged, it must be proved beyond a reasonable doubt. The intent with which an act is done is a purpose or mental condition seldom capable of proof by positive or direct evidence. Such intent, if any, may be arrived at by such just and reasonable inferences and deductions from the facts and circumstances proved by the evidence as the guarded judgment of a candid and cautious person would ordinarily draw therefrom. The law warrants an inference that when a person intentionally commits an act, he intends the natural results or consequences to follow which ordinarily do follow such acts."

Defendant excepted to the trial court's failure to utilize his requested instruction and later argued, among other things, the instruction submitted "does not inform the Jury of the true standard upon which circumstantial evidence is to be assessed, and that standard is that where circumstantial evidence alone is relied on, the evidence must be entirely consistent with the Defendant's guilt and wholly inconsistent with any rational hypothesis of the Defendant's innocence."

The State in response insists there was direct evidence upon the necessary elements of malicious injury to a building, section 714.1, The Code, and, therefore, a circumstantial evidence instruction would not have been applicable. It is pointed out direct evidence showed defendant threw the brick through the window, thereby establishing the first element—injury to a building. The second element, malice, is argued to have been shown by defendant's own testimony, which indicates defendant intended to beat up Mr. Mata because of an earlier altercation between the two.

In pertinent part, section 714.1, The Code, provides:

"Malicious injury to buildings and fixtures. If any person maliciously injure, deface, or destroy any building or fixture attached thereto, or willfully and maliciously destroy, injure, or secrete any goods, chattels, or valuable papers of another, * * * [he shall be imprisoned or fined]."

In *Larson v. Fireman's Fund Insurance Co.,* 258 Iowa 348, 352, 139 N.W.2d 174, 176, this court held that "malice is an essential ingredient of malicious mischief both at common law and under most statutes defining the offense. * * * [citing authority]. * * *

* * * * * *

"Malice is made an ingredient of malicious mischief by our statute [section 714.1]. * * * [citing authorities].

"The established rule is that if, at the time of doing the acts charged, the accused was bent on mischief, against some person, ordinarily the owner, *and was prompted by an evil mind to destroy or injure the property,* then malice is shown, and it is immaterial whether or not he knew who owned the property. * * * [citing authorities]." (Emphasis supplied).

■ Malice is an essential element of the crime charged and, therefore, must be proved beyond a reasonable doubt in order to secure conviction. See *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375.

■ Malice may be either actual or legal. When there is actual ill will or hatred in a person's mind toward another there is actual malice. *McCarthy v. J. P. Cullen & Son Corp.*, 199 N.W.2d 362, 369 (Iowa 1972).

On the other hand, the intentional doing of a wrongful act without justification or lawful excuse will permit an inference of a wicked state of mind, i. e., legal malice as opposed to actual malice. *State v. Dunn*, 199 N.W.2d 104, 108 (Iowa 1972). See also *Hagenson v. United Telephone Company of Iowa*, 209 N.W.2d 76, 82 (Iowa 1973).

■ We set out the pertinent part of instruction 6 in which the court told the jury:

"The term 'maliciously' means with a wicked or unlawful purpose and includes not only anger or revenge, but also wrongful acts done intentionally without just cause or excuse. If a person at the time of doing an act which results in injury to a building was bent on mischief against some person, ordinarily the owner of the property, and was prompted by a evil mind to maliciously injure some property, then malice is shown and it is immaterial whether or not the person doing the act knew who was the owner of the property."

No objections or exceptions were taken to this instruction. It is therefore the law of the case.

There is substantial uncontroverted evidence in the record before us establishing actual malice. Defendant testified that his purpose in going to the apartment New Year's morning was to get Mata outside and beat him up because defendant wanted to get even for a beating Mata had inflicted on him about a week earlier, which had kept defendant in the house for two days. Defendant gave this testimony on both direct and cross-examination. At no point did he attempt to vary, explain or contradict it.

The foregoing testimony of defendant is direct evidence. See *Jennings v. Farmers Mutual Ins. Assn.*, 260 Iowa 279, 284, 149 N.W.2d 298, 301; McCormick on Evidence, (Second Ed.), section 185, pages 435–436; 1 Wigmore on Evidence, (Third Ed.), section 25.

There are also facts from which legal malice might justifiably be inferred. Judy Ballard testified defendant and his brother picked up a brick and defendant threw it through the window. She further testified defendant and his two brothers were pounding and kicking the front door of her apartment. Mata had testified that defendant and his two brothers were trying to push the door open. It is presumed a person intends the natural consequences of his intentional acts. *State v. Petsche*, 219 N.W.2d 716, 717 (Iowa 1974); *State v. Graham*, 221 N.W.2d 258, 260 (Iowa 1974).

In *State v. Speck*, 242 N.W.2d at 295, the court said:

"Where there is substantial direct evidence in the record tending to support conviction, refusal of the trial court to give a requested instruction pertaining to the burden of proof justifying a conviction where circumstantial evidence is relied on is not error, notwithstanding there are some circumstances to be considered. See *State v. Peterson*, 196 N.W.2d 436, 438–439 (Iowa 1972); *State v. Post*, 255 Iowa 573, 584, 123 N.W.2d 11, 18; and authorities cited in these opinions."

The challenge made to the instruction given here is identical to the one urged against the instruction on intent given in *Speck*. We held the attack to be without merit. We adhere to what was said there and find no merit in defendant's present contention.

■ IV. Defendant also objects to the phrase in the general credibility instruction (Uniform Instruction 501.5) providing:

"If the testimony or any part thereof is conflicting, you will reconcile it if you can, so that it may all have weight and effect, but if you cannot, you will then give credit to that testimony and to those witnesses that to you as fair-minded men and women seem most entitled thereto."

Defendant requested an instruction which did not contain this paragraph and excepted to the trial court's failure to sub-

mit it. He argued the wording in the instruction given denies him "the benefit of the standard of beyond a reasonable doubt because the Jury is asked more or less to rehabilitate the State's evidence as it can." In his brief, defendant also argues the trial court's charging the jury to reconcile conflicts had the effect of eliminating reasonable doubt from the evidence.

Defendant refers this court to two cases in support of his argument. The first approved an instruction not containing the attacked language, but did not in any way deal with the issue presented here; i. e., whether the "reconciliation" language is prejudicially erroneous. *State v. Hatters,* 184 Iowa 878, 169 N.W. 113. The other, *State v. Droste,* 232 N.W.2d 483 (Iowa 1975), concerned itself with, among other things, the trial court's restrictions upon defendant's closing argument which attempted to demonstrate inconsistencies in the state's evidence. Neither case is particularly helpful in resolution of the instant problem.

Case law on point is sparse. In *United States v. Isaacs,* 493 F.2d 1124, 1163 (7 Cir. 1974), cert. den., 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 and 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146, defendant attacked the following instruction:

"If there are conflicts in the statements of different witnesses, it is your duty to reconcile it if you can, for the law presumes that every witness is sworn to [tell the] truth, but if you cannot reconcile them, the law makes you the sole and exclusive judges of the credibility of the witnesses, and the weight to be given their testimony."

The circuit court first distinguished this instruction from ones stating, "Every witness is presumed to speak the truth," and then held that, " * * * the attacked instruction does not constitute a denial of due process, a conflict with the defendant's presumption of innocence, a shift of the burden of proof, or an invasion of the jury's province to determine the credibility of witnesses. It did not invade any constitutional right." 493 F.2d at 1163–1164.

The court did not specifically discuss the reconciliation language, but, having the chance, did not criticize it either. The whole paragraph was approved.

It is difficult to understand in what manner the instant instruction tells "the jury to eliminate reasonable doubt from the evidence." Reading the instructions as a whole, it is clear that applicability of the reasonable doubt standard was stressed to the jury. Besides the comprehensive instruction explaining that standard, the phrase "beyond a reasonable doubt" was employed three times in other instructions. It becomes quite apparent under this state of the record that the trial court's charge to the jury it should reconcile the evidence, if possible, so that it could all have weight and effect did not deprive defendant of the protections afforded by the reasonable doubt standard inherent in the concept of due process.

Defendant's contentions in this regard are without merit.

The case is

Affirmed.