**John Lee SPECK, Appellant,**

v.

**Calvin AUGER, Appellee.**

**No. 76–1867.**

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1977.

Decided June 9, 1977.

Rehearing Denied Aug. 1, 1977.

---

James M. Sullivan, Des Moines, Iowa, filed brief for appellant.

Richard C. Turner, Atty. Gen., and Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, filed brief for appellee.

Before STEPHENSON and WEBSTER, Circuit Judges, and BENSON, District Judge.*

PER CURIAM.

John Lee Speck appeals from the District Court's[1] denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

In January, 1975, petitioner, who was then a minor, and his companion robbed the Douglas Avenue Fina Station in Des Moines, Iowa. Petitioner was arrested and proceedings were begun against him in juvenile court. The county attorney moved to have the juvenile court transfer the case to the county attorney for disposition in the adult criminal courts, pursuant to Iowa

Code Ann. § 232.72 which provides in pertinent part:

> When a petition alleging delinquency is based on an alleged act committed after the minor's fourteenth birthday, and the court, after a hearing, deems it contrary to the best interest of the minor or the public to retain jurisdiction, the court may enter an order making such findings and referring the alleged violation to the appropriate prosecuting authority for proper action under the criminal law.

The juvenile court judge granted the motion to transfer for the following reasons: (1) there was a prima facie case defendant committed, by force, violence, and putting into fear, a robbery with a gun with intent to kill or maim if resisted; (2) Speck, a school dropout, had previously appeared in juvenile court, had been committed to the Boys Training School and upon violation of a probationary release, had been returned to Eldora; and (3) since the crime was a premeditated and violent one not normally committed by youths and one which would endanger the mental health and life of other persons, it was in the best interest of the child and state to transfer the matter.[2]

Petitioner was subsequently tried as an adult, convicted of robbery with aggravation in violation of Iowa Code Ann. §§ 771.1, 771.2, and sentenced to a term of imprisonment not to exceed 25 years. His conviction was affirmed by the Iowa Supreme Court. *State v. Speck,* 242 N.W.2d 287 (Iowa 1976). Petitioner thereupon filed the instant petition for a writ of habeas corpus, which was denied without a hearing. This timely appeal ensued.

Petitioner's sole allegation on appeal is that the Iowa transfer statute, § 232.72, is unconstitutionally vague. His argument centers on the phrase "contrary to the best interest of the minor or the public" as the standard which must be met before trans-

---

* Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa.

2. These findings appear in the Iowa Supreme Court's opinion on petitioner's direct appeal. *State v. Speck,* 242 N.W.2d 287, 288–89 (Iowa 1976).

fer to adult criminal authorities is proper. The thrust of his contention is that this language does not enumerate specific factors to be considered by the juvenile court in making the transfer decision, and this lack of specific criteria renders the statute unconstitutionally vague because it impermissibly delegates basic policy matters to the juvenile court, with the attendant dangers of arbitrary and discriminatory application. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

The starting point for a discussion of juvenile transfer statutes is *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In *Kent,* the Supreme Court held that the transfer of custody of a youthful offender from juvenile to adult courts must be accomplished with certain protections consistent with due process.[3] The Court in *Kent* did not, however, address the issue of what standards must be considered in making the transfer decision.[4] Indeed, the Supreme Court has recently said:

> In *Kent v. United States,* 383 U.S. at 562, 86 S.Ct. at 1057, the Court held that hearings under the statute there involved "must measure up to the essentials of due process and fair treatment." However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.

*Breed v. Jones,* 421 U.S. 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346 (1975).

It is a basic premise that a federal court reviewing a state statute against a challenge that it is void for vagueness must read the statute "as though it read precisely as the highest court of the State has interpreted it." *Wainwright v. Stone,* 414 U.S. 21, 22–23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973), *quoting Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 273, 60 S.Ct. 523, 84 L.Ed. 744 (1940). In *State v. Halverson,* 192 N.W.2d 765 (Iowa 1971), the Iowa Supreme Court discussed the issues to be considered in a transfer hearing:

> In the transfer hearing the court is concerned with such issues as the amenability of the child to the rehabilitative measures available to the juvenile court, the necessity of safeguarding the public from the child, and the heinousness of the alleged offense.

*Id.* at 769. *See also State v. Anthony,* 239 N.W.2d 850, 851 (Iowa 1976).

---

**3.** Specifically, the Court required a hearing, right to counsel, access of counsel to juvenile court records, and a statement of reasons for the court's decision. Petitioner does not allege that any of these requirements were not met in the instant case.

**4.** In an appendix to the Court's opinion, the Court quoted a District of Columbia policy memorandum which recited eight factors to be considered in making the transfer decision. The eight factors are:

    1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

    2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

    3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

    4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).

    5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U. S. District Court for the District of Columbia.

    6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

    7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior period of probation to this Court, or prior commitments to juvenile institutions.

    8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

*Kent v. United States, supra,* 383 U.S. at 565–67, 86 S.Ct. at 1060.

In addition, on petitioner's direct appeal the Supreme Court of Iowa noted that the juvenile court transfer order in the instant case dealt with seven of the eight considerations listed in the appendix to *Kent v. United States, supra.*[5] The Iowa court went on to say:

> Although the Court in *Kent* did not expressly adopt the criteria . . ., the fact they are appendixed [sic] to the Court's opinion suggests their appropriateness as guidelines for juvenile court waiver proceedings.

> \* \* \* \* \* \*

> Implementation of these standards ["the best interests of the minor or the public"] may be guided by consideration of the criteria set out in *Kent* as well as any others which may arise under the particular facts.

*State v. Speck, supra,* 242 N.W.2d at 293, 294. Thus, the state's highest court has construed the statute to require consideration of certain enumerated factors in making the transfer decision.

Petitioner contends that this limiting construction does not cure the alleged vagueness because the phrase, "as well as any others which may arise under the particular facts," leaves a juvenile court free to consider any factors. This amounts to little more than contending that the statute must fall because it fails to enumerate every factor which a juvenile court could properly consider. We find this approach wholly unpersuasive. The transfer statute, as interpreted by the Iowa Supreme Court, is marked by "flexibility and reasonable breadth, rather than meticulous specificity." *See Esteban v. Central Missouri State College,* 415 F.2d 1077, 1088 (8th Cir. 1969), *cert. denied,* 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970). The statute and its judicial gloss does leave certain latitude for the juvenile court, but it does not confer upon the court "a license for arbitrary procedures." *Kent v. United States, supra,* 383 U.S. at 553, 86 S.Ct. 1045. We conclude that the Iowa transfer statute is not unconstitutionally vague.

Accordingly, the order of the District Court is affirmed.